**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

EDWARD F. KADEN ET AL.,

     Plaintiffs,

       v.                                   Civ. No. 02-1547 (PG)

WYNDHAM EL CONQUISTADOR RESORT &
COUNTRY CLUB ET AL.,

     Defendants.

## OPINION AND ORDER

On April 9, 2002, Mr. Kaden, Kelleen Kaden, Connor Kaden, Jessica Kaden, and Linda Kaden (collectively "plaintiffs"), filed suit against Wyndham El Conquistador Resort & Country Club ("Wyndham"), to recover the damages Mr. Kaden suffered as a result of his slip and fall accident at the Wyndham on April 13, 2001. (Docket No. 15.)

Following several procedural events[1], Wyndham and Universal Ins. Co. ("Universal") (collectively "defendants") moved for summary judgement alleging plaintiffs had failed to demonstrate defendants' negligence pursuant to the applicable standard under Puerto Rico law.  (Docket No. 53.) The matter was referred to Magistrate Judge Aida M. Delgado-Colon for a Report and Recommendation ("R&R") (Docket Nos. 63, 66, 67, 68, 69, 70, 71, 72, 73, and 74.) The Magistrate Judge recommends that defendants' motion be granted. (Docket No. 81.) For the following reasons, the Court does not adopt her recommendation.

## DISCUSSION

### I.  STANDARD OF REVIEW

Pursuant to 28 U.S.C. §§ 636(b)(1)(B); Fed.R.Civ.P. 72(b); and Local Rule 503; a District Court may refer dispositive motions to a United States Magistrate Judge for a Report and Recommendation. See <u>Alamo Rodriguez v. Pfizer Pharmaceuticals, Inc.</u>, 286 F.Supp.2d 144, 146 (D.P.R. 2003). The

---

[1] Wyndham filed a third-party complaint against Association of Owners Las Casitas Condominium and Universal Ins. Co. ("Universal")(Docket No. 23.) The claim against the Association, however, was later voluntarily dismissed. (Docket Nos. 36, 38, and 39.)

adversely affected party may "contest the Magistrate Judge's Report and Recommendation by filing objections 'within ten days of being served' with a copy of the order." <u>United States of America v. Mercado Pagan</u>, 286 F.Supp.2d 231, 233 (D.P.R. 2003)(<u>quoting</u> 28 U.S.C. §§ 636(b)(1).) If objections are timely filed, the District Judge shall "make a de novo determination of those portions of the report or specified findings or recommendation to which [an] objection is made." <u>Felix Rivera de Leon v. Maxon Engineering Services, Inc.</u>, 283 F.Supp.2d 550, 555 (D.P.R. 2003). The Court can "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate", however, if the affected party fails to timely file objections," 'the district court can assume that they have agreed to the magistrate's recommendation'." <u>Alamo Rodriguez</u>, 286 F.Supp.2d at 146 (<u>quoting</u> <u>Templeman v. Chris Craft Corp.</u>, 770 F.2d 245, 247 (1st Cir. 1985).

## II.  SUMMARY JUDGMENT

A motion for summary judgment is governed by Rule 56(c) of the Federal Rules of Civil Procedure, which allows disposition of a case if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." <u>See</u> <u>Sands v. Ridefilm Corp.</u>, 212 F.3d 657, 660 (1st Cir. 2000).  Material facts are those that are outcome-determinative under the governing substantive law.  <u>Morrisey v. Boston Five Cents Savings Bank</u>, 54 F.3d 27, 31 (1st Cir. 1995).  To be successful in its attempt, the moving party must demonstrate the absence of a genuine issue as to any outcome-determinative fact in the record, <u>DeNovellis v. Shalala</u>, 124 F.3d 298, 306 (1 st Cir. 1997), through definite and competent evidence.  <u>Maldonado-Denis v. Castillo Rodriguez</u>, 23 F.3d 576, 581 (1st Cir. 1994).  If the non-movant generates uncertainty as to the true state of any material fact, the movant's efforts should be deemed unavailing.  <u>Suarez v. Pueblo Int'l</u>, 229 F.3d 49, 53 (1st Cir. 2000).  Nonetheless, the mere existence of "some alleged factual dispute between the parties will not affect an otherwise properly supported motion for summary judgment." <u>Anderson v. Liberty Lobby, Inc.</u>. 477 U.S. 242, 247-48 (1986).

At the summary judgment juncture, there is "no room for the measured weighing of conflicting evidence", or for the injection of the judge's own conceptions of likelihood into the determination. <u>Greenburg v. Puerto Rico Maritime Shipping Auth.</u>, 835 F.2d 932, 936 (1st Cir. 1997).  The Court must examine the facts in the light most favorable to the non-movant, indulging that party with all possible inferences to be derived from the facts.  <u>See Rochester Ford Sales, Inc. v. Ford Motor Co.</u>, 287 F.3d 32, 38 (1st Cir. 2002). Nonetheless, when evaluating the evidence before it, the Court may safely ignore "conclusory allegations, improbable inferences and unsupported speculation." <u>Pueblo Int'l</u>, 229 F.3d 49, 53 (1st Cir. 2000).

### III. FINDINGS OF FACT

The Magistrate Judge concluded that because plaintiffs' had failed to file a separate statement of uncontested facts as required by Local Rule 56, defendants' facts should be admitted as undisputed.  Indeed, the Court had previously ruled that because plaintiffs had failed to file a separate statement of uncontested facts, defendants' facts would be deemed admitted and undisputed for purposes of ruling on the motion for summary judgement. (<u>See</u> Docket No. 73.)

At the time, the Court did not review in detail plaintiffs' opposing memorandum.  The ruling came as a result of Universal's insistence that because plaintiffs had failed to strictly comply with Local Rule 56, judgment should be entered in their favor.  As the Court clarified, in no uncertain terms, a party's failure to file a statement of uncontested facts does not mean that judgment will be automatically entered in favor of the moving party. The consequence of a plaintiffs' lack of a statement of facts is that defendants facts would be admitted as unchallenged.  <u>Mercado-Alicea v. P.R. Tourism Co.</u>, 396 F.3d 46, 50 (1st Cir. 2005)(reiterating that parties' failure to present a statement of disputed facts as required by Local Rule justifies the court's deeming the facts presented in the movant's statement admitted). <u>See also</u> <u>Cosme-Rosado v. Serrano-Rodríguez</u>, 360 F.3d 42, 45 (1st Cir.2004).

The First Circuit Court of Appeals has made clear that failure to timely oppose a motion for summary judgment, does not, in itself, justify entry of

Civ. No. 02-1547 (PG)                                                    Page 4

summary judgment against that party.  A District Court is "obliged to consider the motion on its merits, in light of the record as constituted, in order to determine whether judgment would be legally appropriate." <u>Kelly v. United States</u>, 924 F.2d 355, 358 (1st Cir.1991); <u>see also</u> <u>Lopez v. Corporacion Azucarera de Puerto Rico</u>, 938 F.2d 1510, 1517 (1st Cir.1991)(before granting an unopposed summary judgment motion, the court must inquire whether the moving party has met its burden to demonstrate undisputed facts entitling it to summary judgment as a matter of law).  The only consequence of failing to oppose a motion for summary judgment "is that the party may lose the right to file an opposition." <u>Mullen v. St. Paul Fire & Marine Ins. Co.</u>, 972 F.2d 446, 451-52 (1st Cir.1991). <u>See</u> <u>Tavarez v. Champion Products, Inc.</u>, 903 F.Supp. 268, 270 (D.P.R. 1995)("when the nonmovant fails to annex a short, concise statement of material facts in its opposing motion, the movant's statement of contested facts is uncontroverted and deemed admitted).

Local Civil Rule 56(c) states:

> A party opposing a motion for summary judgment shall submit with its opposition a separate, short, and concise statement of material facts. The opposing statement shall admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's statement of material facts and unless a fact is admitted, shall support each denial or qualification with a record citation as required by this rule. The opposing statement may contain in a separate section additional facts, set forth in separate numbered paragraphs and supported by a record citation as required by subsection (e) of this rule.

So-called anti-ferreting rules were promulgated as a result of the First Circuit Court of Appeals' frustration with "the more and more typical phenomenon, ... of a district court having to decide a motion for summary judgment without the assistance the court should expect from counsel." <u>Stepanischen v. Merchants Despatch Transp. Corp.</u>, 722 F.2d 922, 927 (1st Cir. 1983)[2]. <u>See</u> <u>Ruiz Rivera v. Riley</u>, 209 F.3d 24, 28 (1st Cir. 2000)(Anti-

---

[2] In <u>Stepanischen</u>, the circuit court advised district courts that to deal with the problems of a sprawling record, the Court could order the moving party "to provide a list of undisputed facts, buttressed by appropriate record citations, that would entitle the moving party to summary judgment." <u>Id.</u> 722 F.2d at 931.  The court further recommended that the district court "could then order the opposing party to provide a counter-list of genuine, material factual issues, again with appropriate record citations, that would preclude summary judgment." <u>Id.</u>

ferreting rules were developed by district courts in response to circuit court's concern that, absent such rules, summary judgment practice could too easily become a game of cat-and-mouse, giving rise to the 'specter of district court judges being unfairly sandbagged by unadvertised factual issues'.")(internal citations omitted); <u>see also</u> <u>Nicholas Acoustics & Specialty Co. v. H & M Const. Co., Inc.</u>, 695 F.2d 839, 847 (5th Cir. 1983)("Judges are not ferrets!").

Time and time again, the Court of Appeals has sanctioned the use of rules such as Local Rule 56 and has affirmed a district court's decision to ignore statements of uncontested facts filed in blatant disregard to the rule's strictures. <u>See</u> <u>Morales v. A.C. Orssleff's EFTF</u>, 246 F.3d 32, 35 (1st Cir. 2001); <u>Laracuente v. Chase Manhattan Bank</u>, 891 F.2d 17, 19 (C.A.1 (Puerto Rico),1989); <u>Alvarado-Morales v. Digital Equip. Corp.</u>, 843 F.2d 613, 615 (1st Cir.1988); <u>Stepanischen</u>, 722 F.2d at 927.  The Court of Appeals has even approved the district court's insistence on the requirement that the statement of facts be filed as a separate document to the motion and memorandum of law. <u>See Cosme-Rosado</u>, 360 F.3d at 45("The separate, short, and concise statement requirement has been 'interpreted as a requirement that the nonmovant file a statement of material facts separate from--and annexed to--the opposition memorandum'." <u>See also Vargas-Ruiz v. Golden Arch Dev., Inc.</u>, 283 F.Supp.2d 450, 458 (D.P.R. 2003) ("[A] party opposing a motion for summary judgment is ... required to file as an annex to the opposition motion: a separate, short, and concise statement of the material facts ...." (internal quotations omitted).

In its aim of promoting strict compliance with local rules, however, the Court cannot ignore its responsibility under Federal Rule of Civil Procedure 56(e) which provides that if the non-movant fails to respond, summary judgment shall be entered against him, **if appropriate**. <u>See</u> <u>Stepanischen</u>, 722 F.2d 922 at 929.  "The phrase 'if appropriate' incorporates the general standard [of Rule 56(c)] which requires the absence of genuine issues of material fact. <u>Id.</u>

> The drafters of Rule 56(e) made clear in their comments to the rule that [w]here the evidentiary matter in support of the motion does not establish the absence of a genuine issue, summary judgment must be denied even if no opposing evidentiary matter is presented. This

> interpretation is also consistent with the principle
> that the initial and ultimate burden of persuasion in
> a summary judgment motion rests with the moving party.

Id. (internal citations and quotations omitted).  Accordingly, a party's failure to match the moving party's papers "does not automatically relieve the court of its statutory task of determining whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact ...." Stepanischen,  722 F.2d at 930 (citation omitted).

Here, a review of plaintiffs' Memorandum in Opposition to defendants' Motion for Summary Judgment, reveals that plaintiffs in fact did not file a separate statement of uncontested facts but instead, incorporated throughout the discussion, factual statements with specific references to the evidence attached thereto.  Plaintiffs did not, however, admit, deny or qualify defendants' statement of material facts, by reference to each numbered paragraph, with evidentiary support by a record citation.  Local Rule 56 clearly states that if the non-movant fails to qualify the movant's statement of facts, they are deemed admitted.  Without a doubt, plaintiffs' factual statement in opposition is not an example of strict compliance with the strictures of Local Rule 56.  Nonetheless, plaintiffs have included additional facts, supported by record citations, that, upon carefully reviewing them, place the Court in a better position to rule on defendants' motion for summary judgment.

The purpose behind rules such as Local Rule 56 is to spare District Judges the chore of ferreting throughout the record to determine what evidence supports the alleged undisputed facts. Here, although we must take defendants' facts as admitted in light of plaintiffs' flawed memorandum, we cannot completely disregarded the additional facts to which plaintiffs make reference to. Indeed, after reviewing the record as a whole, these facts have shed light on the material issues of fact which preclude granting summary judgment.  The interest of justice require in this particular case that we consider these additional facts plaintiffs have submitted with accompanying evidentiary support. Plaintiffs have aided the Court in its review of the record and thus, complied with Local Rule 56's underlying purpose.

Civ. No. 02-1547 (PG)                                                    Page 7

This case presents a situation similar to the one in <u>Euromodas, Inc. v.</u> <u>Zanella, Ltd.,</u> 368 F.3d 11, 14-16 (1st Cir. 2004). In <u>Euromodas</u>, when the non-movant filed its opposition, it omitted a separate statement listing controverted material facts. "The district court perceived this omission as a 'blatant disregard' of Local Rule 311.12, proceeded to 'deem as admitted the relevant uncontested facts submitted by [the movant] ... and limited the summary judgment record to those facts." <u>Id.</u> at 15.  On appeal, the Circuit Court determined that the District Court erred in its strict interpretation of Local Rule 311.12, predecessor to Local Rule 56, because although the non-movant had failed to file a separate statement of uncontested facts, it had proffered additional facts supported by the record.  The Circuit Court concluded that the District Court should have considered the non-movant's additional facts while at the same time accepting the facts set forth in the movants' Local Rule 311.12 statement as undisputed[3].

This does not mean that attorneys are free to ignore the requirements of Local Rule 56. Attorneys must abide by the local and procedural rules at all times and failure to do so may warrant sanctions.  Yet, this is truly an exceptional case in which the Court, in compliance with its duty to determine whether there are material, outcome-determinative facts in controversy that preclude granting summary judgment, has come across a number of inconsistencies in the record that move the Court to err on the side of caution and consider not only defendants' undisputed facts but plaintiffs' additional uncontested facts as well.

Accordingly, upon reviewing the record, the Court finds the following facts are undisputed:

1.    On April 13, 2001, Kaden was a sitting on a lounge chair in the jacuzzi area of Las Casitas Condominium ("Las Casitas") at the Wyndham. (Docket No. 54, Uncontested Fact (hereinafter "UF") 1.)

2.    Kaden had not been in either the jacuzzi or the pool and was therefore dry. (<u>Id.</u>, UF 2.)

3.    While looking towards the Las Casitas pool area, Kaden saw his

---

[3]  The Court is aware that pursuant to Local Rule 56, as opposed to the previous Rule 311.12, the statement of facts must be filed in a separate document. The Court understands, however, that the premise underlying the <u>Euromodas</u> decision is applicable to the particular circumstances of this case.

Civ. No. 02-1547 (PG)                                           Page 8

daughter walk over towards his sister. (<u>Id.</u>, at UF 3.)

4.   Kaden got up from the lounge chair to walk over to the pool area
     where his daughter and sister were talking. (<u>Id.</u>, UF 4.)

5.   While stepping down from the jacuzzi platform towards the pool
     level, Kaden's foot slipped and he fell backwards onto his left
     shoulder. (<u>Id.</u>, UF 5.)

6.   Kaden does not recall what he slipped on, although he does remember
     that he was dry and barefoot at the time he fell. (<u>Id.</u>, UF 7.)

7.   Andres Melendez ("Melendez") has been employed at the Wyndham since
     1995. (<u>Id.</u>, UF 8.)

8.   He first worked as a security supervisor and since late 2001, has
     held the position of safety and security manager. (<u>Id.</u>, UF 93.)

9.   Mr. Melendez indicated that the Wyndham has a procedure in effect
     for the maintenance of any oils and/or unsafe conditions in and
     around the pool area.  (<u>Id.</u>, UF 10.)

10.  In the event that an unsafe condition is detected in any area of
     the Hotel, the engineering department is contacted to determine the
     nature of the substance and to clean the same.  (<u>Id.</u>, UF 11.)

11.  According to Mr. Melendez, in the event that the engineering
     department is contacted about a substance or unsafe condition, an
     incident report is generated documenting the substance and the
     cleaning of the same.  (<u>Id.</u>, UF 12.)

12.  The incident report is one of a series of documents that is placed
     in a file that is opened regarding the event, accident, unsafe
     condition, or incident. (Docket No. 63, Exhibit 6 at 11-12.)

13.  Similarly, when an accident occurs, the security supervisor
     receives a call from security dispatch and the supervisor on shift
     is informed of the situation. (Docket No. 63, Exhibit 7.)

14.  After all the information is gathered in the incident report, an
     entry is made in a "log book" that is kept at the dispatch. (Docket
     No. 63, Exhibit 7 at 24.)

15.  The day of Mr. Kaden's accident, there was a call from dispatch
     regarding his fall and the supervisor on shift, Hector Cedeño
     ("Cedeño"), received the call and was the person who went to
     assist Mr. Kaden. (<u>Id.</u>, Exhibits 8 & 10.)

16.  Furthermore, the in-house doctor of the hotel also went to
     examine Kaden in his room after the incident occurred. (Docket
     No. 63, Exhibit 11.)

17.  Whenever the in house doctor visits a guest in order to provide
     medical attention, it is indicated in the incident report that
     the Dr. performed an examination. (<u>Id.</u>, Exhibit 13.)

**IV. ANALYSIS**

The Magistrate Judge concluded, that even construing the facts in

the light most favorable to the non-moving party, and based only on defendants' statement of facts, plaintiffs had failed to demonstrate defendants' negligence pursuant to the applicable standard under Puerto Rico law. Because plaintiffs timely filed objections to the R&R (Docket No. 84), we review de novo. See Rivera de Leon, 283 F.Supp.2d at 555.

Plaintiffs oppose the Magistrate Judge's recommendation arguing that the defendants were negligent in failing to maintain the Jacuzzi area safe for its guests in a manner that would have prevented the accident. They make reference to the additional facts and evidence submitted with their opposition to defendants' motion for summary judgment.

Article 1802 of the Puerto Rico Civil Code, 31 L.P.R.A. § 5141, "imposes liability on any person or entity who by an act or omission causes damage to another through fault or negligence." De-Jesus-Adorno v. Browning Ferris Industries of Puerto Rico, Inc., 160 F.3d 839, 842 (1st Cir. 1998)(citing P.R. Laws Ann. tit. 31, § 5141). See Valle v. American Int'l Ins. Co., 8 P.R. Offic. Trans. 735, 738, 108 P.R. Dec. 692 (1979). Negligence is defined as the failure to exercise due diligence to avoid foreseeable risks. De-Jesus-Adorno, 160 F.3d at 824; Malave-Felix v. Volvo Car Corp., 946 F.2d 967, 971 (1st Cir. 1991). "Liability will only arise if the damages complained of were reasonably foreseeable to the defendant. De-Jesus-Adorno, 160 F.3d at 842. "The foreseeability contemplated by the statute does not include every conceivable consequence of an act or omission, since to do so would make the defendant an absolute insurer." Bou Maldonado v. K-mart Corp., No.97-1268, 2001 WL 1636768, *2 (D.P.R. Oct. 18, 2001)(citations omitted)(unreported case). "To establish the foreseeable character of an event, the evidence must be such that the fact finder can rationally conclude that the risk complained of is among the universe of risks recognizable by reasonably prudent persons acting with due diligence under the same or similar circumstances." Id. (citations omitted). Foreseeability is usually a jury question because it is an evaluative application of legal standards to facts, where there might be reasonable difference of opinion. See Marshall v. Perez Arzuaga, 828 F.2d 845, 849 (1st Cir. 1987).

To recover on a negligence theory, plaintiffs "must establish (1) a duty requiring the defendant to conform to a certain standard of conduct, (2) a breach of that duty, (3) proof of damage, and (4) a causal connection between the damage and the tortious conduct." <u>De-Jesus-Adorno</u>, 160 F.3d at 824 (quoting <u>Woods-Leber v. Hyatt Hotels of Puerto Rico, Inc.</u>, 124 F.3d 47, 50 (1st Cir.1997)). "A legal duty arises in one of three ways: (1) by a statute, regulation, ordinance, bylaw or contract; (2) as the result of a special relationship between the parties that has arisen through custom; or (3) as the result of a traditionally recognized duty of care particular to the situation. <u>De-Jesus-Adorno</u>, 160 F.3d at 824.

"In Puerto Rico, an owner of a commercial establishment is potentially liable for all injuries occurring in areas where it has retained control." <u>Bou Maldonado</u>, 2001 WL 1636768, at *3 (citing <u>Cotto v. C.M. Insurance Co.</u>, 116 D.P.R. 644 (1985); <u>Aponte Betancourt v. Melendez</u>, 87 D.P.R. 619 (1963); <u>Goose v. Hilton Hotels</u>, 79 D.P.R. 494 (1956)). An "enterprise which maintains a public place for purpose of transacting business for its own benefit, is bound to maintain it in such a safe condition that one who is induced to enter the premises will not suffer any damage." <u>Bou Maldonado</u>, 2001 WL 1636768, at *3 (citing <u>Soc. Gananciales v. González Padín Co., Inc.</u>, 117 D.P.R. 94 (1986)). This duty of care requires that commercial establishments "take the necessary precautions or ... adopt the necessary security measures to preserve the safety of their costumers." <u>Bou Maldonado</u>, 2001 WL 1636768, at *3. Nevertheless, commercial establishments are not "liable for events that cannot be foreseen, or for those that, having been foreseen, are inevitable." <u>Id</u>. In sum, plaintiffs must prove that the injury was reasonably foreseeable and that it could have been avoided had defendant acted with care. See <u>Woods-Leber</u>, 124 F.3d at 51.

A guest staying at a hotel expects the latter to take all necessary security measures to avoid foreseeable risks. It is reasonably foreseeable that the areas surrounding or nearby a pool or a jacuzzi in a hotel will become wet by the people going in and out of both the pool and the jacuzzi. Likewise, it is foreseeable that the floor surrounding the pool and the jacuzzi may become oily due to residue from sun block and suntan lotions used

Civ. No. 02-1547 (PG)                                              Page 11

by the bathers. It is therefore, reasonably foreseeable that the area surrounding a pool or a jacuzzi may become slippery due to these two conditions. Accordingly, one would expect the hotel to take all available precautionary measures to reduce the likelihood of slips and falls in said area.

Here, plaintiffs' claim that their expert, Dr. Manuel Rodriguez-Perazza, identified two causes that resulted in Kaden's damages, first, that Kaden's fall was consistent with him having stepped on a slippery surface, and second, that the area where Kaden fell lacked handrails as required by the applicable construction code.

Upon carefully reviewing the record, the Court finds there is an issue of fact regarding whether the floor was wet or slippery at the time Mr. Kaden fell. Mr. Kaden does not recall on what he slipped on, yet the expert testified that his accident is consistent with him having stepped on a slippery surface and that it could be reasonably presumed that the area was either wet or oily. (Docket No. 54, Exhibit 4; Docket No. 63, Exhibit 3.) The only Wyndham employee who made a statement regarding the conditions of the floor is Mr. Cedeño who, at the time of the accident, worked at the Wyndham as a Security Supervisor. (Docket No. 63, Exhibit 2.) Mr. Cedeño stated that the day after the incident he was informed that Mr. Kaden had indicated that the had slipped on some oil residue and fell on the floor. (Id.) Unexplainably, Mr. Cedeño, who was the security supervisor on shift the day of Mr. Kaden's accident, and who is the only one aside plaintiff who has some knowledge of the apparent conditions of the floor in the area where Mr. Kaden fell, to this date has been unavailable to be deposed by the plaintiffs. Furthermore, the record is inconsistent as to when Mr. Cedeño learned of Mr. Kaden's accident. Diana Rivera, the insurance adjuster who investigated the case, testified that it was the day of the accident that Mr. Cedeño answered a call from dispatch regarding plaintiff's accident and not the following day as Mr. Cedeño stated in his statement.

Another issue that has surfaced is the lack of an incident report regarding Mr. Kaden's fall. As abovementioned, the Wyndham has a procedure in effect for maintenance of any unsafe conditions in and around the pool area.

Civ. No. 02-1547 (PG)                                                Page 12

According to Mr. Melendez, in the event that the engineering department is contacted about a substance or unsafe condition, an incident report is generated documenting the substance and the cleaning of the same.  Similarly, when an accident occurs, the security supervisor receives a call from security dispatch and the supervisor on shift is informed of the situation. After all the information is gathered in the incident report, an entry is made in a "log book" that is kept at the dispatch.

     It is undisputed that the day of Mr. Kaden's accident, there was a call from dispatch regarding his fall and the supervisor on shift, Mr. Cedeño, received the call and was the person who went to assist Mr. Kaden. (Docket No. 63, Exhibits 8 & 10.)  Furthermore, that the in-house doctor of the hotel also went to examine Kaden in his room after the accident occurred (Id., Exhibit 11) and that if the in-house doctor visits a guest, the incident report so reflects.(Id., Exhibit 13.) Surprisingly though, Mr. Melendez testified that no such report has been found, notwithstanding the fact that he himself stated that there was an entry in the log book regarding plaintiff's accident and that if such an entry is made, it can be assumed that an incident report was in fact prepared.(Docket No. 54, UF 13; Docket No. 63, Exhibits 7 & 8.) What is more,  Diana Rivera testified that the in-house doctor went to see Mr. Kaden and that his report should have been part of the Hotel's incident report.  (Docket No. 63, Exhibit 12.)

     Although the apparent loss of the incident report has nothing to do with what caused Mr. Kaden's fall, essential information like witnesses and the exact condition of the floor is missing since this was all supposed to be part of an incident report.  Said information could have shed light on the circumstances surrounding Mr. Kaden's fall which at this time are somewhat blurry to the Court. The loss of the incident report is all the more troubling considering that Ms. Marisol Rubildo, the dispatcher on-duty the date of Mr. Kaden's accident, testified that incident reports are very hard to get lost since they are always kept secured in an office. (See Docket No. 63, Exhibit 15.)

     Lastly, the lack of handrails allegation gives the Court serious reason to pause.  Plaintiffs aver that pursuant to Dr. Rodriguez-Perazza's report and

Civ. No. 02-1547 (PG)                                            Page 13

deposition testimony, the area where Mr. Kaden fell lacked the required hand rails which is proximately linked to his fall. (Docket No. 63, Exhibits 3 & 4.) Accordingly, they argue that defendants are liable to them for their failure to provide handrails in an area where it is foreseeable that wet, oily, and other similar conditions would require so, and is in violation of the applicable construction code.

    Pursuant Dr. Rodriguez-Perazza's uncontested[4] analysis, the stairs that go down from the jacuzzi platform to the coraline plates sidewalk, which have a width in excess of 88 inches, are not equipped with intermediate hand rails as required by the Uniform Building Code [11] for safety considerations. This fact, he concluded, constitutes a foreseeable hazard and potential cause for falls. (Id.) He furthermore concluded that the presence of handrails in compliance with the code's requirement would have prevented or significantly mitigated the effect of Mr. Kaden's slip and fall if he had used them. (Id.)

    Given the foreseeability of slippery conditions, the lack of hand rails can be considered a dangerous condition that defendants could have reasonably prevented. Furthermore, it can be assumed that if the construction code required such handrails, defendants had knowledge of the need for handrails and the lack thereof. The record as it stands would lead the Court to believe that in fact the steps lacked the required handrails. However, whether the lack of hand rails was the proximate cause of Mr. Kaden's fall, is for the jury to decide. See Marshall, 828 F.2d at 848-49 ("The question of proximate causation is sometimes for the court and sometimes for the jury. Not only ordinary fact questions, but also evaluative applications of legal standards (such as the concept of legal foreseeability) to the facts are properly jury questions")(internal quotations omitted). In sum, based on the record presently before the Court, we cannot determine whether, as a matter of law, defendants were negligent and are liable to plaintiffs.

--------

    [4] As part of the additional facts plaintiffs included in their opposition to defendant's Motion for Summary Judgment, they proffered expert Dr. Manuel Rodriguez-Perraza's Technical Analysis of the area of Mr. Kaden' fall in which he states that the presence of the handrails would have prevented or significantly mitigated the effect of a slip and fall event when stepping down of the Jacuzzi's elevated platform, had there been such handrails present and plaintiff used them. Defendants' failed to counter said evidence in their Reply to plaintiffs' opposition.  Accordingly, this fact is deemed undisputed.

Civ. No. 02-1547 (PG)                                                    Page 14

## CONCLUSION

Finding there are genuine issues of fact that preclude granting summary judgment, the Court denies defendants' motion. Consequently, we do not adopt the Magistrate Judge's recommendation.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, August 15, 2005.


                                        S/JUAN M. PEREZ-GIMENEZ
                                        U.S. DISTRICT JUDGE

_____